IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JESSICA WEBSTER-VALENTINO,<br>BARBARA FREEMONT,<br>AMEN SHERIDAN,<br>RODNEY MORRIS,<br>DORAN MORRIS, JR.,<br>FORREST ALDRICH,<br>MITCHELL PARKER,<br>TILLIE ALDRICH,<br>JEFF MILLER,<br><br>　　　　　Defendants. | 8:16CR 277<br><br>INDICTMENT<br><br>18 U.S.C. § 2<br>18 U.S.C. § 371<br>18 U.S.C. § 666(a)(1)(A)<br>18 U.S.C. § 669 |

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2016 SEP 21 PM 1:11

OFFICE OF THE CLERK

The Grand Jury charges that:

## BACKGROUND

### Entities Involved

1. At all relevant times, the Omaha Tribe of Nebraska was a federally recognized Indian tribe located in the District of Nebraska.

2. The Omaha Tribe of Nebraska was governed by a tribal council elected by members of the tribe. The tribal council consisted of a Chairman, Vice-Chairman, Secretary, Treasurer, and three general members.

3. The United States Department of Health and Human Services (HHS) and the Indian Health Services (IHS) are departments or agencies of the executive branch of the United States.

1

4. At all relevant times, the Carl T. Curtis Health Education Center was a health care facility located in Macy, Nebraska on the Omaha Indian Reservation which provided health care services to tribal members of the Omaha Tribe of Nebraska. The Carl T. Curtis Health Education Center was funded, in part, through a contract with IHS.

5. At all relevant times, defendant AMEN SHERIDAN was the chairman of the tribal council of the Omaha Tribe of Nebraska, defendant DORAN MORRIS, JR. was the Vice-Chairman, defendant FORREST ALDRICH was the Secretary and defendant JEFF MILLER was the Treasurer. Defendants RODNEY MORRIS, TILLIE ALDRICH, and MITCHELL PARKER were general members of the tribal council of the Omaha Tribe of Nebraska.

6. At all relevant times, defendant JESSICA WEBSTER-VALENTINO was employed at the Carl T. Curtis Health Education Center and served as its Administrative Officer.

7. At all relevant times, defendant BARBARA FREEMONT was employed in the finance department of the Omaha Tribe of Nebraska.

## Federal Funding

8. The Indian Health Services, an agency within HHS, provided funding to the Omaha Tribe of Nebraska for various tribal programs pursuant to the Indian Self-Determination and Education Assistance Act, enacted as Public Law 93-638. Contracts issued pursuant to this Act were referred to as 638 contracts.

9. An IHS 638 contract funded the Carl T. Curtis Health Education Center. For the fiscal year ending September 30, 2012, the IHS 638 contract provided approximately $12,193,729. For the fiscal year ending September 30, 2013, the IHS 638 contract provided approximately $12,256,573.

10. The Carl T. Curtis Health Education Center also billed insurance companies and Medicaid for services rendered to tribal members.

11. IHS and the Carl T. Curtis Health Education Center were "health care benefit programs" as that term was defined under Title 18, United States Code, Section 24(b). IHS provided plans or contracts, affecting commerce, through which medical benefits and services were provided. The Carl T. Curtis Health Education Center was an entity that provided medical benefits and services for which payment was made pursuant to the IHS contract or with third party funds.

12. Funds received by the Omaha Tribe of Nebraska pursuant to the IHS 638 contract were deposited into an account at the Charter West National Bank. This account was commonly referred to as "checkbook 29" and was used for paying expenses of the Carl T. Curtis Health Education Center.

13. In general, the terms of the IHS 638 contract required that the Omaha Tribe of Nebraska use the federal funds to pay for allowable direct costs of the programs identified in the contract and to pay specified amounts of indirect costs to the Omaha Tribe of Nebraska for administrative services provided by the Omaha Tribe of Nebraska to the tribal programs funded by the IHS 638 contract.

Check Issuance Procedures

14. Before a tribal program expended any funds, a Purchase Requisition form would be prepared and submitted to the finance department of the Omaha Tribe which would indicate the entities to receive payment, the amount involved, the account funds were to be paid from, and, frequently, the justification for the payment. Certain Purchase Requisitions had to be approved by the tribal council before payment would be made.

15. At all relevant times, the Omaha Tribe of Nebraska utilized the services of an accounting firm, Bland and Associates, (hereinafter "Bland") to process accounts payable checks. Although Bland did not have independent veto power over any requested payment, Bland did serve in an advisory capacity to advise the Omaha Tribe whether the proposed payment appeared to be an allowable expense, was properly documented, or was otherwise properly justified. Bland would then prepare the requested checks at its office and send the checks to the Omaha Tribe for signature by authorized tribal council members. Although Bland processed most checks issued by the Omaha Tribe, the Omaha Tribe did maintain the ability to print and issue checks without Bland's involvement.

### Bylaws of the Omaha Tribe of Nebraska

16. Article III, Section 1 of the Bylaws of the Omaha Tribe of Nebraska provides, "The expenditure of funds belonging to the Tribe must first be approved by a majority vote of the Tribal Council at a regular stated meeting."

17. Article III, Section 2 of the Bylaws of the Omaha Tribe of Nebraska provides, "The members of the Tribal Council, boards, and committees shall be paid for services rendered in the interest of the community welfare from funds within the exclusive control of the Tribe when previously authorized by the Tribal Council."

18. Article III, Section 3 of the Bylaws of the Omaha Tribe of Nebraska provides, "All salaries proposed by the Tribal Council for Tribal officials to be paid from funds within the exclusive control of the Tribe must be approved by the Tribe at a popular referendum."

4

## IHS Funding Disputes

19. The IHS entered into a number of 638 contracts with various tribes around the country between 1995 and 2011. However, Congress had not appropriated sufficient funds to permit the IHS to pay all such contracts in full. As a result, the IHS developed a procedure in which it paid only a percentage or partial amount for each such 638 contract. This led to various Contract Disputes Acts claims and lawsuits. Eventually, in 2012, the United States Supreme Court entered a decision in Salazar v. Ramah Navajo Chapter, 132 S.Ct. 2181 (2012) which, when applied to the IHS 638 contracts, would appear to require the IHS to pay all 638 contracts in full.

20. The Omaha Tribe of Nebraska filed claims with IHS for unpaid 638 contract support costs. In 2005, the Omaha Tribe filed separate claims for each of the contract years 1995 through 2005. In 2012, the Omaha Tribe filed separate claims for each of the contract years 2006 through 2011. The total amount of the claims submitted by the Omaha Tribe of Nebraska for 1995-2011 was approximately $8,936,000.

21. The filing of claims did not guarantee that those claims would be paid in full as filed as the IHS needed to examine and evaluate the claims to determine the validity of same. Thus, the IHS responded to each of the claims of the Omaha Tribe by simply acknowledging receipt of the claims. The IHS responses expressly indicated that the response was not an acknowledgment of the validity of the claim nor did it waive any legal defenses the IHS may have regarding the claims.

22. The various claims of the Omaha Tribe for unpaid contract support costs were neither approved nor paid by IHS as of November 5, 2012. In fact, those claims were not settled with IHS until 2015.

Tribal Council Actions

23. On November 5, 2012, the Tribal Council of the Omaha Tribe of Nebraska approved a request from defendant BARBARA FREEMONT to pay a percentage of the Omaha Tribe of Nebraska's Contract Dispute Act claim to defendants BARBARA FREEMONT and JESSICA WEBSTER-VALENTINO, all members of the tribal council, and to selected other employees of the Omaha Tribe of Nebraska. Amounts distributed pursuant to this approved motion are set forth below:

| EMPLOYEE | AMOUNT |
| --- | --- |
| Jessica Webster-Valentino | $89,692.92 |
| Barbara Freemont | $89,692.92 |
| Jeff Miller | $40,213.32 |
| Amen Sheridan | $13,404.44 |
| Rodney Morris | $13,404.44 |
| Doran Morris, Jr. | $13,404.44 |
| Forrest Aldrich | $13,404.44 |
| Mitchell Parker | $13,404.44 |
| Tillie Aldrich | $13,404.44 |
| J.F. | $26,808.88 |
| D.R. | $26,808.88 |
| B.C. | $26,808.88 |
| I.G. | $3,000.00 |
| L.W. | $3,000.00 |
| L.S. | $3,000.00 |

| | |
|---|---|
| Total Amount: | $388,792.44 |

24. On November 5, 2012, the Tribal Council of the Omaha Tribe of Nebraska approved a motion made by defendant TILLIE ALDRICH to pay $7,500 apiece to members of past tribal councils dating back to 1994 for its purported oversight of the above-described Contract Dispute Act issue. This resulted in defendant RODNEY MORRIS approving and submitting a Purchase Requisition form to the finance department of the Omaha Tribe seeking $211,500 to be paid to past tribal council members and other employees of the Omaha Tribe of Nebraska. This requisition included additional amounts to be paid to defendants AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER over and above the amounts listed in paragraph 23 above. However, this Purchase Requisition was not paid because defendant JESSICA WEBSTER-VALENTINO refused to permit funds of the Carl T. Curtis Health Center to be used for this purpose.

## COUNT I

(Conspiracy to violate 18 U.S.C. §§ 666(a)(1)(A) and 669)

25. Paragraphs 1 through 24 are hereby re-alleged and incorporated here as if they were set forth in full.

### A. THE CONSPIRACY

26. Beginning on a date unknown to the grand jury, but no later than October 16, 2012, and continuing to on or around November 28, 2012, in the District of Nebraska, the defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT and others known and unknown to the grand jury, did knowingly and intentionally conspire to commit an offense against the United States, to wit: (a) conversion and misapplication of

$5,000 or more from a program receiving federal funds in violation of Title 18, United States Code, Section 666(a)(1)(A); (b) conversion and misapplication of moneys of a health care benefit program in violation of Title 18, United States Code, Section 669.

### B. OBJECT OF THE CONSPIRACY

27. The primary object of the conspiracy was to obtain money to which the defendants were not entitled. To accomplish this, defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT: (a) directly and indirectly misrepresented the level of their involvement in the preparation of the claims submitted to IHS for unpaid contract support costs; (b) made a proposal to the tribal council for authorization of unreasonable bonus or incentive payments in the amount of $89,362.92 to be paid to each of the defendants and which proposal also included unreasonable bonus or incentive payment amounts to be paid to members of the tribal council and others in order to induce the tribal council to approve the proposal; (c) caused checks to be prepared and issued in-house from the Carl T. Curtis Health Education Center account without going through the normal review and issuance procedure the Omaha Tribe had established with Bland and Associates; (d) caused or allowed checks to be distributed and cashed prior to tribal council approval being obtained for the aforesaid bonus or incentive proposal.

### C. OVERT ACTS

28. In furtherance of the conspiracy and to accomplish the objects thereof, the defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT committed the following overt acts, among others, in the District of Nebraska and elsewhere:

    a. On or about the 23rd day of October, 2012, defendant BARBARA FREEMONT wrote and sent a letter to defendant JEFF MILLER, the Treasurer of the Omaha Tribe of Nebraska, in support of the request by JESSICA WEBSTER-

VALENTINO and BARBARA FREEMONT for a bonus or incentive for themselves, the tribal council, and others.

b. On or about the 25th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO met with defendants RODNEY MORRIS and FORREST ALDRICH and solicited their approval of the request by JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT for a bonus or incentive for themselves, the tribal council, and others.

c. On or about the 16th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO sent an email to defendant BARBARA FREEMONT which included three different proposals with suggested bonus or incentive amounts to be paid to defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT, the tribal council, and others.

d. On or about the 16th day of October, 2012, defendant BARBARA FREEMONT sent an email to defendant JESSICA WEBSTER-VALENTINO selecting the proposed payment amount she preferred. This email also suggested increasing the amounts to be paid to the members of the tribal council and indicated a belief that the tribal council would not complain about the payments to WEBSTER-VALENTINO and FREEMONT if the tribal council members got a little more for themselves.

e. On or about the 16th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO sent an email to defendant BARBARA FREEMONT which contained changes to the proposed payment amounts as had been requested by FREEMONT. This proposal increased the amounts to be paid to the tribal council members from $8,936.29 to $13,404.44 per council member. This email further

9

advised FREEMONT that WEBSTER-VALENTINO would agree to whatever FREEMONT could get to go through.

f. On or about the 16th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO sent an email to defendant BARBARA FREEMONT suggesting that the best source for the proposed bonus or incentive payments would be from the contract carryover funds from the Carl T. Curtis Health Education Center.

g. On or about the 17th day of October, 2012, defendant BARBARA FREEMONT sent an email to defendant JESSICA WEBSTER-VALENTINO directing WEBSTER-VALENTINO to send a requisition form to the tribal treasurer for approval since the funds to be used to pay the bonus or incentive amounts were coming from the Carl T. Curtis Health Education Center.

h. On or about the 25th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO cashed check number 51028 in the amount of $7,000 which was drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank. This was prior to the date that the bonus or incentive proposal was submitted to the Omaha Tribal Council for approval.

i. On or about the 26th day of October, 2012, defendant JESSICA WEBSTER-VALENTINO cashed check number 51040 in the amount of $82,362 which was drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank. This was prior to the date that the bonus or incentive proposal was submitted to the Omaha Tribal Council for approval.

j. On or about the 18th day of October, 2012, defendant BARBARA FREEMONT cashed check number 5107 in the amount of $7,000 which was drawn on the Carl T. Curtis Health Education Center account to the Charter West National Bank.

10

This was prior to the date that the bonus or incentive proposal was submitted to the Omaha Tribal Council for approval.

k.  On or about the 29th day of October, 2012, defendant BARBARA FREEMONT cashed check number 51032 in the amount of $82,362.92 which was drawn on the Carl T. Curtis Health Education Center amount at the Charter West National Bank. This was prior to the date that the bonus or incentive proposal was submitted to the Omaha Tribal Council for approval.

l.  On or about the 17th day of October, 2012, defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT caused defendant JEFF MILLER, Treasurer of the Omaha Tribe of Nebraska, to submit a requisition form to the finance department of the Omaha Tribe of Nebraska setting forth the amounts of bonus or incentive moneys to be paid to defendants WEBSTER-VALENTINO and FREEMONT, members of the tribal council, and others.

### D. LOSS

29. As a result of the actions of defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT, moneys in the Carl T. Curtis Health Education Center account were converted and misapplied. On October 17, 2012, checks were drawn on the Carl T. Curtis Health Education Center account and were subsequently distributed to defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT, members of the tribal council, and others in the total amount of $388,792.44.

In violation of Title 18, United States Code, Section 371.

### COUNT II

(Conspiracy to violate 18 U.S.C. § 666(a)(1)(A) and 669)

30. Paragraphs 1 through 24 are hereby re-alleged and incorporated here as if they were set forth in full.

### A. THE CONSPIRACY

31. Beginning on a date unknown to the grand jury, but no later than October 16, 2012, and continuing to on or around November 28, 2012, in the District of Nebraska, the defendants AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHEL PARKER, TILLIE ALDRICH, and JEFF MILLER did knowingly and intentionally conspire to commit an offense against the United States, to wit: (a) conversion and misapplication of $5,000 or more from a program receiving federal funds in violation of Title 18, United States Code, Section 666(a)(1)(A); and (b) conversion and misapplication of moneys of a health care benefit program in violation of Title 18, United States Code, Section 669.

### B. OBJECT OF THE CONSPIRACY

32. The primary object of the conspiracy was to obtain moneys to which the defendants were not entitled because the moneys: (a) were not regular tribally approved salary payments; (b) were unreasonable in amount; (c) were unearned; (d) were not in compliance with the provisions of Omaha Tribe of Nebraska Resolution 09-19-A; (e) were prematurely paid; (f) were not related to the purposes for which funds were to be used pursuant to the IHS 638 contract; and (g) were otherwise contrary to the provisions of OMB circular A-87. To accomplish this, the defendants, as members of the Tribal Council of the Omaha Tribe of Nebraska, discussed and approved a request to pay a percentage of a Contract Dispute Act claim for unpaid contract support costs due to the Omaha Tribe of Nebraska to current members of the Tribal Council and selected other tribal employees in the total amount of $388,792.41. It was a further part of the conspiracy that the defendants

12

discussed and approved a motion to pay $7,500 apiece to previous Tribal Council members dating back to 1994. It was a further part of the conspiracy that the defendants received and cashed checks drawn on the checking account of the Carl T. Curtis Health Education Center which contained funds received by the Omaha Tribe pursuant to an IHS 638 contact.

### C. OVERT ACTS

33. In furtherance of the conspiracy and to accomplish the objects thereof, the defendants AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER committed the following overt acts, among others, in the District of Nebraska:

    a. On or about October 25, 2012, defendants RODNEY MORRIS and FORREST ALDRICH met with Jessica Webster-Valentino and gave written approval to a proposal of a Contract Disputes Act claim to current members of the Tribal Council and selected other tribal employees.

    b. On or about the 17th days of October, 2012, defendant JEFF MILLER signed his approval to a Purchase Requisition form authorizing payments to be made to members of the tribal council and other tribal employees relating to the Contract Disputes Act claim.

    c. On or about October 17, 2012, defendants AMEN SHERIDAN and FORREST ALDRICH signed check number 51036 drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank which was made payable to defendant RODNEY MORRIS in the amount of $6,404.44.

    d. On or about October 17, 2012, defendants FORREST ALDRICH and RODNEY MORRIS signed check number 51026 drawn on the Carl T. Curtis Health

13

Education Center account at the Charter West National Bank made payable to defendant AMEN SHERIDAN in the amount of $7,000.

e. On or about November 5, 2012, defendants RODNEY MORRIS and FORREST ALDRICH made and seconded a motion before the Tribal Council to approve a request submitted by Barbara Freemont to pay a percentage of a Contract Disputes Act claim to members of the tribal council and other tribal employees.

f. On or about November 5, 2012, defendants RODNEY MORRIS, FORREST ALDRICH, MITCHELL PARKER, JEFF MILLER, and TILLIE ALDRICH voted to approve the motion described in paragraph (e) above.

g. On or about November 5, 2012, defendants TILLIE ALDRICH and FORREST ALDRICH made and seconded a motion to pay $7,500 apiece to past tribal council members dating back to 1994.

h. On or about November 5, 2012, defendants RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH and JEFF MILLER voted to approve the motion described in paragraph (g) above.

i. On or about November 5, 2012, defendant DORAN MORRIS, JR. endorsed and cashed check number 51021 drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank which was made payable to him in the amount of $7,000.

j. On or about November 5, 2012, defendant MITCHELL PARKER endorsed and cashed check number 51023 drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank which was made payable to him in the amount of $7,000.

14

k. On or about November 13, 2012, defendant TILLIE ALDRICH endorsed and cashed check number 51015 drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank which was made payable to her in the amount of $7,000.

l. On or about November 5, 2012, defendant AMEN SHERIDAN endorsed and chased check number 51026 drawn on the Carl T. Curtis Health Education Center account at the Charter West National Bank made payable to him in the amount of $7,000.

**D. LOSS**

34. As a result of the actions of defendants AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER, moneys in the Carl T. Curtis Health Education Center account were converted and misapplied. On October 17, 2012, checks were drawn on the Carl T. Curtis Health Education Center account and were subsequently distributed to AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER in the total amount of $93,831.08.

In violation of Title 18, United States Code, Section 371.

## COUNTS III through XI

(Conversion and Misapplication of Federal Program Funds and Aiding and Abetting)

35. Paragraphs 1 through 24 are hereby re-alleged and incorporated here as if they were set forth in full.

36. Beginning on or about October 17, 2012 and continuing through on or about November 13, 2012, in the District of Nebraska, defendants JESSICA WEBSTER-VALENTINO,

15

BARBARA FREEMONT, AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER, being agents of the Omaha Tribe of Nebraska, an Indian tribal government, which during fiscal years 2012 and 2013 received benefits in excess of $10,000 per fiscal year through contracts, grants and agreements with the Indian Health Service, an agency of the United States Department of Health and Human Services, intentionally misapplied and without authority knowingly converted to themselves and Omaha Tribe of Nebraska employees J.F., I.G., L.W., D.R., B.C., and L.S., all persons other than the rightful owner, moneys and funds valued at $5,000 or more which were owned by and under the care, custody, and control of the Omaha Tribe of Nebraska in that the defendants caused bonuses or incentives to be issued which were: (a) in unreasonable amounts; (b) prematurely paid; (c) not related to the purposes for which the funds were to be used pursuant to the IHS 638 contract; (d) otherwise contrary to the provisions of OMB Circular A-87; and (e) not in compliance with the provisions of Omaha Tribe of Nebraska Resolution 09-19-A and the Bylaws of the Omaha Tribe of Nebraska.

37. The moneys and funds which were intentionally misapplied and knowingly converted, as described in paragraph 36 above, are more particularly described in each Count below, each such instance being a separate Count of this Indictment:

| COUNT | DEFENDANT | AMOUNT DISTRIBUTED |
|---|---|---|
| III | Jessica Webster-Valentino | $89,692.92 |
| IV | Barbara Freemont | $89,692.92 |
| V | Amen Sheridan | $13,404.44 |
| VI | Rodney Morris | $13,404.44 |

16

| VII | Doran Morris, Jr. | $13,404.44 |
| VIII | Forrest Aldrich | $13,404.44 |
| IX | Tillie Aldrich | $13,404.44 |
| X | Jeff Miller | $40,213.32 |
| XI | Mitchell Parker | $13,404.44 |

38. Defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT aided and abetted the misapplication and conversion of the moneys and funds described in Counts V through XI and are therefore included in each of those counts by this reference. In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNTS XII through XX

(Misapplication of funds of a health care benefit program)

39. Paragraphs 1 through 24 are re-alleged and incorporated here as if they were set forth in full.

40. Beginning on or about October 17, 2012 and continuing through on or about November 13, 2012, in the District of Nebraska, defendant JESSICA WEBSTER-VALENTINO, BARBARA FREEMONT, AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER intentionally misapplied and without authority knowingly converted to themselves and Omaha Tribe of Nebraska employees J.F., I.G., L.W., D.R., B.C., and L.S., all persons other than the rightful owner, moneys and funds of health care benefit programs, namely the Indian Health Service and the Carl T. Curtis Health Education Center, by directing and causing to be issued bonuses or incentives from carryover funds the Carl T. Curtis Health Education Center had available from its IHS 638 contract and

which bonuses and incentives were: (a) in unreasonable amounts; (b) prematurely paid; (c) not related to the purposes for which the funds were to be used pursuant to the IHS 638 contract; (d) otherwise contrary to the provisions of OMB circular A-87; and (e) not in compliance with the provisions of Omaha Tribe of Nebraska Resolution 09-19-A.

41. The moneys and funds which were intentionally misapplied and knowingly converted, as described in paragraph 40 above, are more particularly described in each Count below, each such instance being a separate Count of this Indictment:

| COUNT | DEFENDANT | AMOUNT DISTRIBUTED |
|---|---|---|
| XII | Jessica Webster-Valentino | $89,692.92 |
| XIII | Barbara Freemont | $89,692.92 |
| XIV | Amen Sheridan | $13,404.44 |
| XV | Rodney Morris | $13,404.44 |
| XVI | Doran Morris, Jr. | $13,404.44 |
| XVII | Forrest Aldrich | $13,404.44 |
| XVIII | Tillie Aldrich | $13,404.44 |
| XIX | Jeff Miller | $40,213.32 |
| XX | Mitchell Parker | $13,404.44 |

42. Defendants JESSICA WEBSTER-VALENTINO and BARBARA FREEMONT aided and abetted the misapplication and conversion of the moneys and funds described in Counts XIV through XX and are therefore included in each of those counts by reference. In violation of Title 18, United States Code, Sections 669 and 2.

A TRUE BILL.

~~[signature redacted]~~
FOREPERSON

[signature]
DEBORAH R. GILG
United States Attorney
District of Nebraska

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

By: [signature] DOUGLAS R. SEMISCH, #16655
Assistant U.S. Attorney